James A. KIRBY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2091.

Court of Appeals of Alaska.

Dec. 31, 1987.

---

Linda K. Wilson, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Elizabeth H. Sheley, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

On February 19, 1985, James A. Kirby, a twenty-year-old first offender, pled no contest to a charge of sexual abuse of a minor in the first degree, an unclassified felony. AS 11.41.434(a)(1). He received the eight-year presumptive term. AS 12.55.125(i). He appealed his sentence to this court, contending that the trial court erred in failing to refer his case to a three-judge sentencing panel, pursuant to AS 12.55.-165–.175.

Kirby's initial sentencing occurred prior to publication of our decisions in *Bartholomew v. State*, 720 P.2d 54 (Alaska App. 1986), and *Smith v. State*, 711 P.2d 561 (Alaska App.1985). We therefore vacated his sentence and remanded his case to a trial court for reconsideration in light of those cases. On remand, the trial court reimposed the eight-year presumptive term. Kirby appeals, again contending that the trial court erred in failing to refer his case to a three-judge panel. We hold that the trial court was clearly mistaken in failing to refer this case to a three-judge panel. We therefore vacate Kirby's sen-

tence and remand this case to the trial court for referral. We express no opinion as to what action should be taken by the three-judge panel.

## THE OFFENSE

Kirby sexually abused his female cousin, A.M., for slightly over two years, from the time she was eight years old until she was ten. A.M. told her mother that Kirby had engaged in anal intercourse with her about thirty times, fellatio about ten times, and had fondled her genitals about a dozen times. These incidents occurred while Kirby was babysitting A.M. at his home. A.M.'s resistence was overcome, in part, by Kirby's threat that he would tell her mother she used profanity in opposing his assault.

Kirby admitted to the police that he and his cousin had engaged in anal intercourse twice and fellatio once. He initially claimed that she "went along with it." Kirby voluntarily discontinued abusing A.M. in May of 1984. A.M. did not report Kirby's actions to her mother until August of 1984, after watching a movie about child abuse. It appears that all members of Kirby's and A.M.'s families obtained mental health counseling upon A.M.'s disclosure. Kirby continued in counseling until A.M.'s mother reported the abuse to the police, which resulted in Kirby's incarceration in February of 1985.

The record reflects that A.M. suffered a great deal of psychological and emotional trauma, in addition to the physical trauma associated with the offenses. Prior to her disclosures to her mother, she had difficulties relating with her peers and her family. Since the disclosure, she and her family have been in counseling and she appears to have adjusted well.

A.M.'s mother and Kirby's mother are sisters. A.M.'s disclosures initially resulted in an estrangement between the two branches of the family. With counseling, the family has apparently worked out its differences, and A.M.'s mother now supports Kirby's request for a more lenient sentence. She indicates that A.M. approves of her request.

## THE OFFENDER

Kirby was born on December 25, 1964. He was approximately seventeen years of age when the abuse began, and nineteen when he voluntarily terminated it. While in high school, Kirby attended the Career Center, studying automechanics. He dropped out of high school in the twelfth grade and obtained his G.E.D. Prior to his incarceration, Kirby held a number of jobs as an unskilled laborer.

At the two sentencing hearings, the trial court had the benefit of written reports from Dr. Linda Webber, a clinical psychologist who had treated Kirby and his family from September, 1984 until Kirby's incarceration in February, 1985. Dr. Webber also testified in court at the hearing held after remand. Dr. Webber indicated that during counseling, A.M.'s mother and Kirby's mother disclosed for the first time that both had been the victims of child sexual abuse. It also appears that Kirby has an uncle who has been convicted of incest and is currently undergoing outpatient treatment through a deferred prosecution program. It does not appear, however, that Kirby was aware of these other incidents of sexual abuse in his extended family while he was abusing A.M.

In Dr. Webber's opinion, Kirby's abuse of A.M. was a series of somewhat isolated incidents caused by his delayed development. She noted that as an adolescent, Kirby was isolated and alone, had virtually no friends, and had no relationships with female peers. Dr. Webber considers Kirby to be a good candidate for rehabilitation because he readily admits his guilt,[1] has taken positive steps to correct his psychological and emotional deficiencies, and has utilized resources within the institution to prepare for a productive adult life when he

---

1. The state disputes this conclusion pointing out that Kirby's initial description of the abuse differed in quantity and quality from A.M.'s. The trial judge did not expressly determine the quantity of the abuse. He found that Kirby had engaged in anal intercourse and fellatio with A.M.

is released. Kirby's institutional reports have all been favorable. In her written report, presented at the second sentencing hearing, Dr. Webber concluded:

> I believe [Kirby] needs treatment at Hiland Mountain [Eagle River Correctional Facility] and that he should then be released. I am very concerned about the effects of long-term incarceration on Jim's sexual identity. In the past, his low self-esteem retarded his dating experiences. I fear that a long sentence might actually have a detrimental effect on helping him develop the kind of normal, healthy heterosexual relationships which would help prevent future sexual abuse. I would recommend probation with required individual and family counseling, Adult Children of Alcoholics meetings, and drug and alcohol testing.

Kirby entered the Hiland Mountain Sexual Offender Treatment Program on April 6, 1987. It is difficult to predict how long it will take him to complete the program. Though it is possible to complete it in eighteen months, of those who have completed the program, it more typically takes approximately two years. The program has only been in operation a short time, however, and to date only thirteen percent of those who have entered the program have completed it. Once an inmate completes the program, the Department of Corrections' policy permits them to be furloughed if they have up to three years left to serve on their sentences. Diane Schenker, a correctional officer who supervises the program, indicates that of the thirteen percent who have completed the program, most were furloughed with about one year to go before their release date. Kirby's projected release date is August 5, 1990.[2]

### THE SENTENCE

Kirby was originally sentenced on June 6, 1985. At that time, the trial court heard

from counsel and the defendant and received a description of the Hiland Mountain Sexual Offender Program from a representative of the Division of Corrections. Judge Buckalew expressed reservations about an eight-year presumptive term in light of Kirby's age. Nevertheless, he felt that the seriousness of the crime precluded him from finding that an eight-year sentence was shocking to the conscience or otherwise manifestly unjust. He, therefore, imposed the presumptive term but specified that Kirby not be incarcerated outside the State of Alaska and be made eligible for the Hiland Mountain Sexual Offender Program at the earliest practicable time.

After remand, Judge Buckalew held a second sentencing hearing on June 17, 1987. He announced his decision the following day. At the hearing, he heard further argument from counsel and testimony from Dr. Webber, on behalf of the defendant, and testimony from Officer Schenker, on behalf of the state. Judge Buckalew found Kirby's prognosis for treatment to be good to excellent. Nevertheless, after careful consideration, he concluded that this was not a proper case to refer to a three-judge panel. While it is not completely clear from the record, it appears that Judge Buckalew was persuaded to deny referral by the relatively long time period during which the abuse continued and by the nature of the abusive acts (anal intercourse and fellatio).

### DISCUSSION

Alaska Statute 12.55.165 provides:

> If the defendant is subject to [presumptive sentencing] and the court finds by clear and convincing evidence that manifest injustice would result from failure to consider relevant aggravating or

---

**2.** Kirby received the eight-year presumptive term for a person convicted of sexual abuse of a minor in the first degree. AS 12.55.125(i)(1). He was therefore not eligible for discretionary parole during the term of his presumptive sentence. AS 33.16.090(b); AS 12.55.125(g)(3). He is, however, entitled to reduction for statutory good-time. By statute, Kirby, and those similar-

ly situated, are entitled "to a deduction of one-third of the term of imprisonment, rounded off to the nearest day, if the prisoner follows the rules of the correctional facility in which the prisoner is confined." AS 33.20.010(a). It appears that "good-time" accounts for the Division of Corrections' projected release date for Kirby.

mitigating factors not specifically included in AS 12.55.155 or from imposition of the presumptive term, whether or not adjusted for aggravating or mitigating factors, the court shall enter findings and conclusions and cause a record of the proceedings to be transmitted to the three-judge panel for sentencing under AS 12.55.175.[3]

The statute, therefore, establishes two distinct grounds for referral of a case to a three-judge panel: (1) if the presumptive term, adjusted for aggravating or mitigating factors, would be manifestly unjust or plainly unfair and, (2) if manifest injustice will result from failure to consider a nonstatutory aggravating or mitigating factor. *See, e.g., Smith v. State,* 711 P.2d 561, 569 (Alaska App.1985).

When the question is whether the presumptive term is manifestly unjust under the totality of the circumstances, we essentially look to the sentencing criteria established in *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970) (rehabilitation, deterrence of self and others, affirmation of community norms, and where necessary, isolation to protect the community). *Lloyd v. State,* 672 P.2d 152, 155 (Alaska App. 1983). These standards are currently codified in AS 12.55.005. We have noted that this evaluation is similar to that performed by appellate courts prior to presumptive sentencing in determining whether a sentence was clearly mistaken. *See, e.g.,*

*Dancer v. State,* 715 P.2d 1174, 1177 & n. 2 (Alaska App.1986).

 In order to determine whether the presumptive term is so out of line with sentences previously imposed that it could be termed manifestly unjust, the sentencing court, like an appellate court under former law, must compare the defendant's conduct, background and experience with other individuals sentenced for similar crimes. *See, Pears v. State,* 698 P.2d 1198, 1202–04 (Alaska 1985); *Totemoff v. State,* 739 P.2d 769, 775 (Alaska App.1987). We recognize that individual cases will almost always be distinguishable on their facts. Hence, it is the examination of all sentences involving similar crimes which is most significant, not the sentence imposed in any single case. *Pruett v. State,* 742 P.2d 257, 266 & n. 10 (Alaska App.1987). Of course, the significance of any past case is also affected by intervening changes in the law. *See Pears,* 698 P.2d at 1202–03.

 Having carefully analyzed the record, we find no error in the trial court's conclusion that, under former law, a sentence of eight years for Kirby would not have been clearly mistaken. *See, Alexander v. State,* 611 P.2d 469, 482–83 (Alaska 1980); *Reynolds v. State,* 664 P.2d 621, 629–30 (Alaska App.1983); *Edenshaw v. State,* 631 P.2d 506, 507 (Alaska App.1981). We also recognize that this case has some similarities to *Ahvik v. State,* 613 P.2d 1252 (Alaska 1980). Ahvik, like Kirby, was a youthful first offender who engaged in a

---

**3.** Alaska Statute 12.55.175 provides:

(a) There is created within the superior court a panel of five superior court judges to be appointed by the chief justice in accordance with rules and for terms as may be prescribed by the supreme court. Three judges of the panel shall be designated by the chief justice as members. The remaining two judges shall be designated by the chief justice as first and second alternates to sit as members in the event of disqualification or disability in accordance with rules as may be prescribed by the supreme court.

(b) Upon receipt of a record of proceedings under AS 12.55.165, the three-judge panel shall consider all pertinent files, records, and transcripts, including the findings and conclusions of the judge who originally heard the matter. The panel may hear oral testimony to supplement the record before it. If the

panel finds that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of the presumptive term, whether or not adjusted for aggravating or mitigating factors, it shall sentence the defendant in accordance with this section. If the panel does not find that manifest injustice would result, it shall remand the case to the sentencing court, with a written statement of its findings and conclusions, for sentencing under AS 12.55.125.

(c) The three-judge panel may in the interest of justice sentence the defendant to any definite term of imprisonment up to the maximum term provided for the offense or to any sentence authorized under AS 12.55.015.

(d) Sentencing of a defendant or remanding of a case under this section shall be by a majority of the three-judge panel.

forcible sexual assault on a female relative. He was convicted of rape under former AS 11.15.120, and was subject to a maximum twenty-year sentence under former AS 11.-15.130(b). The trial court took into account Ahvik's youth and prospects for rehabilitation and sentenced him to five years' imprisonment.

On appeal, the supreme court reversed, holding that the sentence should not exceed five years with two years suspended. The supreme court stressed three things: first, that Ahvik's victim was not unknown to him; second, that Ahvik was young and had potential for rehabilitation; and, third, that the victim and her family had forgiven Ahvik. The court also noted that, while Ahvik committed a forcible rape, it was not of the "brutal type" likely to cause long-lasting psychological damage, and that, in fact, the victim had not appeared to have suffered long-term psychological damage. 613 P.2d at 1254. The supreme court noted that the possibility of significant character and behavioral changes in young adults from age eighteen to twenty-five reinforced its conclusion that Ahvik should not be incarcerated with hardened criminals, but should be housed in a facility which emphasized rehabilitation programs. 613 P.2d at 1254.

While Kirby's victim apparently manifested behavioral problems and other evidence of emotional and psychological damage both during the abuse and shortly thereafter, it appears that she has responded to counseling and is on the way to recovery. We also note that the victim's mother, apparently with her daughter's consent, has endorsed Kirby's request for a more lenient sentence. Nevertheless, we believe *Ahvik* is distinguishable in four important respects. First, the legislature has increased the maximum penalty for comparable conduct from twenty to thirty years, and now imposes a presumptive term of eight years. Second, the legislature has made committing a sexual assault against a member of the same household an aggravating factor, AS 12.55.155(c)(18), suggesting that an assault on a known victim should not necessarily be considered as mitigation. Third, and more important, there

is a substantially greater disparity in age between Kirby and his victim. Ahvik was eighteen when he raped his fifteen-year-old cousin, whereas Kirby was seventeen when he began sexually assaulting his eight-year-old cousin. Finally, Ahvik committed only a single assault against his cousin, whereas Kirby committed numerous assaults upon his cousin over a two-year period.

Under the circumstances, the trial court was not clearly mistaken in concluding that an eight-year sentence for Kirby would not have been clearly mistaken under former law. Therefore, the sentence itself was not manifestly unjust under the presumptive sentencing scheme. *See, e.g., State v. Brinkley,* 681 P.2d 351, 355–58 (Alaska App.1984) (discussing permissible ranges of sentencing for sexual assaults on family members under prior law).

■ Kirby's primary argument rests on the second alternative justification for referring a case to a three-judge panel: where manifest injustice would result from failure to consider a nonstatutory aggravating or mitigating factor. We have previously recognized that the legislature granted authority to the three-judge sentencing panel to supplement statutory aggravating and mitigating factors with nonstatutory aggravating and mitigating factors in appropriate cases. *Dancer,* 715 P.2d at 1178 n. 3. Such nonstatutory factors, however, must approximate the criteria for statutory aggravating and mitigating factors. *Id.* at 1178 (citing the *Report of the Twentieth Century Fund Task Force on Criminal Sentencing, Fair and Certain Punishment* at 20–21 (1976)).

In *Smith v. State,* 711 P.2d 561, 572 (Alaska App.1985), we approved a common law mitigating factor, directing the three-judge panel to consider a first offender's potential for rehabilitation. Kirby contends that *Smith* relieves him of the burden of satisfying the requirement, set out in AS 12.55.165, that the trial court "finds by clear and convincing evidence that manifest injustice would result from failure to consider relevant aggravating or mitigat-

ing factors not specifically included in AS 12.55.155."

Although *Smith* establishes a general rule that it is manifestly unjust to fail to consider a first offender's unusual prospects for rehabilitation in connection with a presumptive sentence, the rule is subject to exceptions. In a subsequent case, *State v. Price,* 740 P.2d 476, 481 (Alaska App.1987), we pointed out that the three-judge panel, and, by extension, the trial court, should generally treat nonstatutory, mitigating factors essentially the same way that trial courts are required to treat statutory mitigating factors. Moreover, in *Linn v. State,* 658 P.2d 150, 153 (Alaska App.1983), we noted that a trial court may impose the presumptive sentence, even when it finds by clear and convincing evidence the presence of an aggravating factor, and, by extension, a mitigating factor, if the court is satisfied under the totality of the circumstances, viewed in light of the *Chaney* criteria, that no modification of the sentence is required. A trial court might make the same determination in deciding whether or not to refer a case to the three-judge panel based on a nonstatutory mitigating factor.

Nevertheless, as we said in *Smith:*

> There are many cases in which the court might readily find that the ultimate impact of a non-statutory factor on the presumptive term would be negligible. On this basis, the court could reasonably conclude that no manifest injustice would result if the factor were not considered in imposition of a sentence. Yet there will inevitably be many other cases in which a non-statutory factor is so integrally related to the basic goals of sentencing that it would be plainly unfair to disregard it entirely for sentencing purposes, even when its actual impact on the presumptive sentence would be relatively modest.

711 P.2d at 570. In *Smith,* we went on to hold that a first offender's potential for rehabilitation met the criteria of being integrally related to the basic goals of sentencing, citing art. 1, § 12 of the Alaska Constitution and *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

▮▮▮ Judge Buckalew found on remand that this was not an appropriate case for transfer to a three-judge panel. He did not set out his reasons with particularity. Nevertheless, it appears that he, in fact, made the judgment required by *Linn,* that the unspecified mitigating factor, though present, should not significantly affect the presumptive sentence. He seems to have based his conclusion on two factors. First, Kirby engaged in a continuous course of sexual abuse of his victim over a two-year period and, consequently, the court could not identify his offense as impulsive or out of character. Second, Kirby engaged in particularly serious sexual abuse of his child-victim.

In describing the nonstatutory mitigating factor in *Smith,* we noted that both of Smith's robberies occurred on the same night and could be described as impulsive. We also noted that both Smith and his codefendant, King, were youthful first offenders. In our view, neither impulsiveness nor youth are prerequisite conditions for the availability of the mitigating factor. A defendant's age and the nature of his offense are, nevertheless, highly relevant in determining his potential for rehabilitation. In some cases, the fact that a defendant is of mature years and has engaged in a continuous course of sexual abuse, might justify a trial court in discounting his potential for rehabilitation, despite the enthusiastic testimony of mental health professionals. *Bartholemew v. State,* 720 P.2d 54 (Alaska App.1986). We are not prepared, however, to hold that the mitigating factor should never be applied to those of mature years or those whose criminal conduct is not "impulsive." [4]

---

4. In this regard, we agree with Justice Mosk—that "the advantages and disadvantages of age, young or old, cannot be rigidly categorized" in determining a given individual's rehabilitative potential. *See People v. Ghent,* 43 Cal.3d 739, 239 Cal.Rptr. 82, 739 P.2d 1250, 1277 (1987) (Mosk, Justice, concurring). Justice Mosk's observation illustrates our conclusion that a given defendant's age and whether his conduct was impulsive, or part of a pattern, cannot be viewed in isolation but must be considered with-

■ Reading *Smith* and *Linn* together, we conclude that once the court finds the mitigating factor of unusual prospects for rehabilitation in the case of a first offender, it should evaluate the factor's impact on an appropriate sentence in the same way it would evaluate a statutory mitigating factor that had been established by clear and convincing evidence. The court should consider it in light of the totality of the circumstances and in light of the *Chaney* sentencing criteria to determine whether the presumptive term should be adjusted. The court should deny referral to the three-judge panel only when it concludes that no adjustment to the presumptive term is appropriate in light of the factor. In this case the trial court was clearly mistaken in failing to refer Kirby's case to the three-judge panel.

■ While the duration of Kirby's offense might deter the three-judge panel from substantially reducing Kirby's sentence, we do not believe that justice would allow Kirby's potential for rehabilitation to be totally disregarded. A number of factors lead us to this conclusion. First, Kirby was a youthful offender. He was seventeen years old when he began abusing his cousin and was nineteen when he discontinued. As the supreme court indicated in *Ahvik*, a sentencing court should consider the tremendous potential for character and behavioral changes in the young. *Ahvik*, 613 P.2d at 1254. Second, Kirby voluntarily desisted from abusing his victim during the four months prior to her first reporting the incidents. He also voluntarily sought counseling, in which his family also participated, long before his victim's mother reported the incidents to the police. It appears that, prior to his arrest, Kirby was already well on the way to correcting the emotional and psychological deficiencies that motivated his conduct. Further, there is expert evidence that a long period of incarceration would actually adversely effect Kirby's rehabilitation. *See, e.g., Smith*, 711 P.2d at 570; *Ahvik*, 613 P.2d at 1254.

■ We stress that a three-judge panel has a number of options available to it after referral. It may, for example, impose the presumptive term but eliminate the prohibition on parole eligibility. Eligibility for parole might be particularly significant in the case of a youthful first offender who could benefit from the flexibility that parole eligibility would provide to correctional officials. Alternatively, the three-judge panel might provide for a partially suspended sentence ensuring Kirby's supervision in the community after his release from incarceration and the availability of further confinement should Kirby not comply with conditions of probation. As we emphasized in *Smith*, referral to a three-judge panel does not necessarily require a prediction that the defendant will receive substantially less incarceration than the presumptive term. It simply permits the three-judge panel to consider a nonstatutory mitigating factor and evaluate its impact, in light of the totality of the circumstances.

■ The state makes three arguments against referring Kirby's case to the three-judge panel. First, the state argues that the mitigating factor should not apply to repeated instances of forcible anal intercourse and fellatio. We agree that the precise nature of the defendant's offenses is a significant factor in determining both his prognosis for rehabilitation and the part his potential for rehabilitation should play in devising a just sentence. Nevertheless, we do not believe that the seriousness of Kirby's crime, standing alone, renders his potential for rehabilitation irrelevant. Hence, the nature of the offense, while relevant, does not necessarily render the nonstatutory mitigating factor irrelevant.

The state's second contention is that the legislature amended the presumptive sentencing system to expand its applicability to first offenders. According to the state, the legislature must have been aware that some first offenders would have a substantial potential for rehabilitation but, nevertheless, they did not make rehabilitation potential a statutory mitigating factor. In

in the totality of the circumstances in determin- ing the defendant's potential for rehabilitation.

the state's view, this militates against frequent recourse to this factor.

■■■ We reaffirm our decision that the trial courts, and by extension the three-judge panel, should not adopt aggravating or mitigating factors expressly rejected by the legislature. *See Totemoff,* 739 P.2d at 776; *Dancer,* 715 P.2d at 1178 n. 3. We decline, however, to view the legislature's failure to address an issue, even one which counsel believes must have been obvious to the legislature, as an express rejection.[5] The requirement that the trial court find manifest injustice in failing to consider an unusual potential for rehabilitation, serves to ensure that recourse to the three-judge panel will only occur in exceptional cases.

Finally, the state is concerned that permitting trial courts to refer first-time offenders possessing unusually good prospects for rehabilitation for sentencing by a three-judge panel will undermine the legislative purpose of avoiding disparity in sentencing. It argues that lenient judges will virtually always find unusual prospects for rehabilitation, while those judges given to severe sentencing practices will virtually always reject it. Since the state considers potential for rehabilitation an ambiguous concept, it contends that this court will substantially undermine presumptive sentencing by generally recognizing potential for rehabilitation as a mitigator.

■■■ The state is particularly concerned that virtually all first offenders convicted of sexual offenses will present unusual prospects for rehabilitation, because such offenders ordinarily have good family support, well-paying jobs, a good education, and little or no prior contact with the criminal justice system. The state has apparently misunderstood the meaning of the terms rehabilitation and its synonym, reformation, in this context. A person has an unusually good potential for rehabilitation

if the court is satisfied, after reviewing the totality of the circumstances, that he or she can adequately be treated in the community and need not be incarcerated for the full presumptive term in order to prevent future criminal activity. Rehabilitation potential is thus the converse of dangerousness.[6]

We recognize that no one can predict, with certainty, whether an individual will or will not commit future criminal activity. The most the court can do is evaluate the totality of the circumstances and attempt to determine why the particular criminal committed the crimes. The court predicts rehabilitation, with any degree of satisfaction, only when it is reasonably satisfied that it knows why a particular crime was committed. The court can be satisfied that the conditions leading to the criminal act will not reoccur, if the factors which led the defendant to crime are correctible or if the criminal act or acts resulted from unusual environmental stresses unlikely to ever reoccur.

If a person, despite a good education, a good job, strong support in the community, and a loving family consistently commits criminal acts, a judge might well conclude that these favorable factors do not establish a good potential for rehabilitation. We have approved substantial sentences for men and women with good job histories, good educations, and established places in the community when, despite these advantages, criminal activity occurred. *See State v. Karnos,* 696 P.2d 685 (Alaska App. 1985); *Brezenoff v. State,* 658 P.2d 1359 (Alaska App.1983). *See also Karr v. State,* 686 P.2d 1192 (Alaska 1984); and *State v. Doe,* 647 P.2d 1107, 1111 n. 12 (Alaska App.1982). Consequently, a trial court may well conclude that a defendant's status as a pillar of the community does not portend a good to excellent potential for

---

5. It is important to constantly keep in mind the distinction between the two different bases for finding manifest injustice. The *Lloyd* test looks to the particular facts of the case in comparison with other cases. In contrast, the *Smith* test views an individual case primarily as a vehicle for consideration of the development of common law aggravating and mitigating factors to be applied generally to cases which come before the court.

6. In context, we use the term "dangerous" to connote likely recidivism rather than potential for violence. *State v. Graybill,* 695 P.2d 725, 729–30 (Alaska 1985).

rehabilitation if he or she has consistently violated the law.

In the instant case, Judge Buckalew apparently accepted Dr. Webber's conclusion that Kirby turned to his cousin because of emotional and psychological problems leading to his isolation and his failure to develop interpersonal social skills. In Webber's view, Kirby made great advances in coping with these problems and had substantially reduced the risk he posed to the community. Acceptance of this testimony would explain Judge Buckalew's conclusion that Kirby's prognosis for treatment was good to excellent. It also serves to differentiate Kirby from those offenders who have chosen to sexually abuse children in preference to establishing relationships with adults of their acquaintance.

In each case, the trial judge must independently evaluate the evidence. The trial judge is not bound by expert opinions. *Alto v. State,* 565 P.2d 492, 503 n. 17 (Alaska 1977). When, however, the trial court accepts testimony as valid, we may consider it on appeal. Webber's testimony, which Judge Buckalew accepted, supports our conclusion that Kirby is not the typical first-time sexual offender for whom the legislature intended the eight-year presumptive term. The three-judge panel is, of course, free to reevaluate these facts in determining whether Kirby has the unusual prospects for rehabilitation required for application of the mitigating factor. The three-judge panel is not bound by Judge Buckalew's finding nor is it bound by Dr. Webber's testimony. Its power to independently determine the facts provides further assurance that use of nonstatutory mitigating factors will not result in undermining the legislative goals of avoiding disparity in sentencing.

The sentence of the superior court is VACATED and this case is REMANDED to the trial court for referral to the three-judge panel.[7]

7. At the sentencing hearing on remand, the state pointed out that Dr. Webber's favorable prognosis for Kirby presupposed his completion of the Hiland Mountain Sexual Offender Program which the state estimated would leave Kirby with approximately one year to serve before his predicted release date. In the state's view, should Kirby successfully complete the program, he would be furloughed at that time. Consequently, the state argued that the correctional program for Kirby adequately addressed his rehabilitation potential and rendered recourse to the nonstatutory mitigating factor unnecessary. While we recognize the importance of the sexual offender treatment program and the benefit it offers defendants, particularly where a potential furlough is available as an incentive to those who participate in the program, we do not believe that the trial court should consider a defendant's ability to accumulate good-time, to become eligible for work and education releases, or other forms of furlough in determining whether a case should be referred to a three-judge panel.

In our view, the trial court should evaluate each presumptive sentence on the assumption that the defendant will serve the entire sentence. *Cf. Jackson v. State,* 616 P.2d 23, 24–25 (Alaska 1980) (trial court should impose an appropriate term of incarceration considering the *Chaney* criteria on the assumption that the entire term may be served).