**Shane R.C. HARAPAT,**

v.

**STATE of Alaska, Appellee.**

**No. A–9091.**

Court of Appeals of Alaska.

Dec. 28, 2007.

should be convicted only of criminally negligent homicide. Harapat contended that he had been spinning the cylinder of the handgun when Alcantra asked to see the weapon, and that while Harapat was handing the revolver to Alcantra, his finger slipped and lost its grip on the revolver's raised hammer—causing the hammer to fall and the weapon to discharge.

The jury acquitted Harapat of second-degree murder, but they also rejected Harapat's argument that the shooting amounted only to a criminally negligent homicide. Instead, the jury convicted Harapat of manslaughter.

Harapat raises two claims on appeal. First, Harapat attacks his conviction by arguing that the State should not have been allowed to introduce evidence of other instances in which Harapat played around with guns or jokingly threatened to shoot someone. (In the alternative, Harapat argues that even if this evidence was properly admitted, the trial judge committed plain error by not giving the jury a cautionary instruction concerning this evidence.) Second, Harapat attacks his sentence, arguing that Superior Court Judge Eric Smith should have sent his case to the statewide three-judge sentencing panel because of Harapat's extraordinary potential for rehabilitation.

For the reasons explained here, we conclude that Judge Smith did not abuse his discretion when he allowed the State to introduce evidence of Harapat's other acts of carelessness or mock assault with firearms. However, we agree with Harapat that Judge Smith should have sent his case to the three-judge sentencing panel.

Paul E. Malin, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

MANNHEIMER, Judge.

Sixteen-year-old Shane R.C. Harapat shot and killed his friend, Kenny Alcantra, while the two were alone in Harapat's bedroom. The State charged Harapat with second-degree murder, alleging that the shooting occurred while Harapat was engaged in "gunplay" that manifested an extreme indifference to the value of human life. Harapat defended by asserting that the shooting was an accident, and that he

*Judge Smith properly allowed the State to introduce evidence of Harapat's other careless or dangerous behavior with firearms*

As explained above, the State contended that Harapat shot Alcantra while Harapat was engaging in dangerous gunplay that manifested extreme indifference to the value of human life; Harapat, on the other hand, contended that the shooting was the result of an unfortunate accident that occurred while Harapat was attempting to hand the weapon to his friend.

To support its theory of extreme indifference, the State sought permission to introduce evidence that Harapat had pointed guns at other people in the past. The State offered the testimony of two witnesses for this purpose.

The first witness was Kelli Alcantra, the sister of the victim. Ms. Alcantra testified (as an offer of proof) that Harapat once pointed an unloaded .44 revolver at her and a friend, and that Harapat asked them if they were scared. The second witness was Travis Wells, a friend of Harapat's. Wells testified (again, as an offer of proof) that Harapat had swung guns in his direction while they were horsing around. Wells also testified that he and Harapat dry-fired the .44 revolver, that they sometimes failed to follow the rules of gun safety, and that they spun the cylinder of the .44 when the weapon was loaded. The State asserted that this evidence was admissible under Evidence Rule 404(b)(1) because it proved motive, intent, knowledge, and absence of accident or mistake.

Based on this offer of proof, Judge Smith allowed the State to introduce this evidence. Judge Smith concluded that the evidence was relevant to determining whether Harapat had purposely pointed the handgun at Alcantra. Relying on the Alaska Supreme Court's decision in *Adkinson v. State*,[1] Judge Smith concluded that evidence that Harapat had previously intentionally pointed guns at people (while playing or in mock assault) was relevant to show that Harapat might have been engaging in similar conduct during the episode being litigated. Judge Smith also found that the State's proposed evidence was relevant in two other ways: to show that Harapat disregarded the rules of gun safety, and to show that Harapat was familiar with the functioning of the weapon that killed Alcantra.

Finally, Judge Smith ruled that the relevance of the proposed evidence was not outweighed by its potential for unfair prejudice. The judge noted that the proposed testimony was simple and straightforward, and that it would not take up a lot of time. He also concluded that the evidence was not likely to deflect the jury from its proper deliberations.

Under Alaska Evidence Rule 404(b)(1), evidence of a defendant's other bad acts can be admitted if the evidence is relevant to prove something other than the defendant's character and the consequent likelihood that the defendant acted true to character during the episode being litigated.[2] Evidence Rule 404(b)(1) lists various potential grounds of relevance that fall outside the rule's ban on character evidence. Among these are the defendant's intent, or the absence of accident or mistake. Both of these grounds of relevance were pertinent in Harapat's case.

Harapat contended that he was no more than criminally negligent in the shooting death of his friend. That is, Harapat disputed the State's assertion that he was aware of, and consciously disregarded, the risk that his conduct would result in someone's death.

(Under the definition of "criminal negligence" codified in AS 11.81.900(a)(4), the State must prove that a reasonable person in the defendant's position would have been aware of the risk, but the State need not prove that the defendant was personally aware of the risk. This is the major distinction between criminal negligence and the next more blameworthy culpable mental state, "recklessness" as defined in AS 11.81.900(a)(3). Recklessness requires proof that the defendant was subjectively aware of the risk and consciously disregarded it, or that the defendant would have been aware of the risk but for intoxication.)

Thus, Harapat's awareness of the risk to human life created by his conduct, and his alleged conscious disregard of that risk, were primary issues at trial. The State's proposed evidence was relevant to these two issues.

Moreover, another of the central issues at trial was whether Harapat consciously aimed the revolver at his friend or whether, instead, the barrel of the gun was inadvertently pointing toward Alcantra when the weapon

**1.** 611 P.2d 528, 531–32 (Alaska 1980).

**2.** *Bingaman v. State*, 76 P.3d 398, 403 (Alaska App.2003); *Beaudoin v. State*, 57 P.3d 703, 707–08 (Alaska App.2002); *Smithart v. State*, 946 P.2d 1264, 1270–71 (Alaska App.1997), *reversed on other grounds*, 988 P.2d 583 (Alaska 1999).

discharged. As was the case in *Adkinson*, Harapat's past behavior of pointing firearms at other people was relevant to the jury's resolution of this issue.

In sum, the State's evidence of Harapat's past recklessness with firearms had specific relevance to the issues being litigated at Harapat's trial, apart from any inference this evidence might raise about Harapat's character. Accordingly, the evidence was not barred by Evidence Rule 404(b)(1).[3]

Moreover, Judge Smith could properly conclude that Harapat's prior acts were not so egregious or shocking as to tempt the jurors to decide Harapat's case on improper grounds—*e.g.*, to convict Harapat in order to punish him for his past acts, or to convict him simply because the jurors believed that he was a bad person who was not entitled to the protection of the law.

Based on this record, we conclude that Judge Smith did not abuse his discretion when he allowed the State to introduce this evidence of Harapat's past acts.

■ When Judge Smith issued this ruling, Harapat's attorney did not ask the judge to specially instruct the jury concerning this evidence—for example, by cautioning the jury against any improper use of this evidence. On appeal, however, Harapat claims that even if Judge Smith could properly allow the State to present this evidence of Harapat's past recklessness with firearms, it was plain error for Judge Smith to fail to give a cautionary instruction concerning this evidence.

Harapat bases his argument on this Court's decision in *Bingaman v. State*, 76 P.3d 398 (Alaska App.2003). In *Bingaman*, this Court held that when a trial judge allows the State to introduce evidence of a defendant's bad acts under Evidence Rule 404(b)(2), (b)(3), or (b)(4), the defendant is entitled to a cautionary instruction-an instruction informing the jury of the limited purposes of this evidence, and expressly cau-

tioning the jurors that they are not to convict the defendant based solely on these prior acts. *Id.* at 416–17. Harapat argues, based on *Bingaman*, that it was plain error for Judge Smith not to give a similar cautionary instruction to the jurors in Harapat's case.

We reject Harapat's argument for two reasons.

First, although the *Bingaman* decision states that such a cautionary instruction is mandatory when the State relies on evidence of other bad acts under Evidence Rules 404(b)(2), (b)(3), or (b)(4), we later clarified in *Douglas v. State* that "this instruction is mandatory only if the defendant requests it, or when the amount and nature of other-crimes evidence introduced against the defendant demonstrates that the failure to give this instruction would amount to plain error." *Douglas*, 151 P.3d 495, 503 (Alaska App. 2006). In other words, *Bingaman* did not alter the rule that, in the absence of a defense request for a cautionary instruction, a trial judge's failure to give a cautionary instruction will require reversal of a conviction only if the failure amounts to plain error (as that term was understood before *Bingaman*).

Second, our requirement of a cautionary instruction in *Bingaman* was based on the fact that Evidence Rules 404(b)(2), (b)(3), and (b)(4) expressly authorize the admission of other-crimes evidence to prove the defendant's character (and the consequent likelihood that the defendant acted true to character during the episode being litigated). In other words, these three evidence rules are exceptions to the general rule codified in Rule 404(b)(1)—the rule that evidence of a person's other bad acts is *not* admissible if it is being offered solely to prove the person's character.

Because Rule 404(b)(1) bars evidence of other bad acts when that evidence is being offered to prove character, evidence admitted under Rule 404(b)(1) does not pose the same

---

**3.** See *Laidlaw Transit, Inc. v. Crouse*, 53 P.3d 1093, 1103 (Alaska 2002); *Clark v. State*, 953 P.2d 159, 163 (Alaska App.1998); *Hoffman v. State*, 950 P.2d 141, 147 (Alaska App.1997); *Smithart v. State*, 946 P.2d 1264, 1272 (Alaska App.1997)—all standing for the proposition that

evidence of a person's other bad acts is admissible under Evidence Rule 404(b)(1) if this evidence has case-specific relevance apart from its tendency to prove something about the person's character.

danger of prejudice to the fairness of the proceedings as evidence admitted under Rules 404(b)(2), (b)(3), or (b)(4)—rules that explicitly authorize the admission of character evidence. In Harapat's case, the challenged evidence was admitted under Rule 404(b)(1). Thus, Harapat's reliance on *Bingaman* is misplaced.

For these reasons, we uphold Judge Smith's decision to allow the State to introduce evidence of Harapat's other acts of carelessly or dangerously handling firearms around other people, and we conclude that it was not plain error for the judge to fail to give the jurors a special cautionary instruction concerning this evidence.

*Judge Smith should have referred Harapat's sentencing to the statewide three-judge panel*

As explained above, the jury convicted Harapat of manslaughter. Manslaughter is a class A felony.[4] As a first felony offender convicted of manslaughter, Harapat faced a presumptive term of 5 years' imprisonment under Alaska's pre-March 2005 presumptive sentencing law.[5]

At the sentencing hearing, Harapat's attorney argued that his client's youth, his lack of a prior criminal record, his high GED scores, and his voluntary counseling and abstention from guns and marijuana all supported a finding that Harapat had an extraordinary potential for rehabilitation. And, based on this non-statutory mitigating factor, the defense attorney argued that Judge Smith should not sentence Harapat, but should instead refer Harapat's case to the statewide three-judge sentencing panel.

See AS 12.55.165(a) (requiring a sentencing judge to forward a case to the three-judge panel if "manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155"), and *Smith v. State*, 711 P.2d 561 (Alaska App.1985) (recognizing the non-statutory mitigator of extraordinary potential for rehabilitation).

Judge Smith agreed that Harapat had proved this non-statutory mitigator. Nevertheless, Judge Smith concluded that he was not required to send Harapat's case to the three-judge sentencing panel. Judge Smith gave two reasons for this conclusion.

First, Judge Smith declared that, even though Harapat had proved the non-statutory mitigator of extraordinary potential for rehabilitation, he was not required to send Harapat's case to the three-judge panel unless it was "manifestly unjust to impose the presumptive term". Judge Smith then concluded that it was *not* manifestly unjust to impose the 5–year presumptive term in Harapat's case—because, despite Harapat's rehabilitative potential, the judge concluded that the sentencing goals of general deterrence and reaffirmation of societal norms justified a 5–year sentence.

Second, Judge Smith indicated that he believed it was important to conclude Harapat's sentencing proceedings that day, rather than delaying the process by sending Harapat's case to the three-judge panel, because a speedy resolution would provide "closure" to the people involved in the case (the defendant and his family, as well as the victim's family and friends).

Having reviewed Judge Smith's explanation of his decision, we conclude that it was error for him not to send Harapat's case to the three-judge sentencing panel.

First, Judge Smith misinterpreted the test for sending Harapat's case to the three-judge panel. Under AS 12.55.165, there are two discrete situations that require a sentencing judge to refer a case to the three-judge panel. The first situation is when the judge finds that manifest injustice would result from failure to consider a relevant aggravating factor not listed in AS 12.55.155(c) or a relevant mitigating factor not listed in AS 12.55.155(d). The second situation is when the judge finds that, even after adjusting the presumptive term to the extent allowed by AS 12.55.155(a) for the aggravating and mitigating factors listed in AS 12.55.155(c) and (d), the presumptive sentencing law still calls

---

4. AS 11.41.120(b).

5. Former AS 12.55.125(c)(1) (pre-March 2005 version).

for a sentence that would be manifestly unjust.

In *Kirby v. State,* 748 P.2d 757 (Alaska App.1987), we explained the two different analyses that a sentencing judge must follow, depending on which clause of AS 12.55.165 might require referral to the three-judge panel.

When a defendant seeks referral to the three-judge panel on the theory that any sentence within the range allowed to a single sentencing judge under the presumptive sentencing law would still be manifestly too severe, the sentencing judge must undertake an analysis of the lower end of the sentencing range allowed by the presumptive sentencing law—either the presumptive term itself (if no statutory mitigators are proved), or the utmost adjustment that is possible under AS 12.55.155(a) based on statutory mitigators. The question to be answered is whether this lowest allowed sentence would still be clearly mistaken under the sentencing criteria first announced by the supreme court in *State v. Chaney*[6] and now codified in AS 12.55.005. *Kirby,* 748 P.2d at 762–63.

In contrast, when a defendant seeks referral to the three-judge panel on the theory that it would be manifestly unjust to fail to consider a non-statutory mitigating factor (*i.e.,* a mitigating factor not listed in AS 12.55.155(d)), the sentencing judge must perform a different analysis. Here, the question is whether, because of the presence of this non-statutory mitigator, it would be manifestly unjust to fail to make some adjustment (albeit small) to the sentence allowed by the presumptive sentencing law. As this Court explained in *Kirby,*

> once the [sentencing] court finds the [non-statutory] mitigating factor of unusual prospects for rehabilitation ..., [t]he court should [assess this mitigating factor] in light of the totality of the circumstances and in light of the *Chaney* sentencing criteria to determine whether the presumptive term should be adjusted. The court

should deny referral to the three-judge panel only when it concludes that *no adjustment* to the presumptive term is appropriate in light of the factor.

*Kirby,* 748 P.2d at 765 (emphasis added).

In *Bossie v. State,* 835 P.2d 1257 (Alaska App.1992), this Court reiterated the test that applies to these latter situations: the question is whether, "when ... the non-statutory mitigator [is] evaluated together with the other circumstances of the case in light of the *Chaney* sentencing criteria, [the presence of the non-statutory mitigator] plainly call[s] for some adjustment (no matter how small)" to the sentence that would normally be allowed under the presumptive sentencing law. *Id.* at 1259.

In Harapat's case, Judge Smith found that Harapat had proved the non-statutory mitigator of extraordinary potential for rehabilitation, but the judge then declined to send Harapat's case to the three-judge panel because he concluded that the applicable 5–year presumptive term was not manifestly unjust. This was the wrong test. The potential injustice of the lowest allowable sentence is the determining factor when a defendant seeks referral to the three-judge panel under the *other* clause of the statute—*i.e.,* when the defendant argues that, even after adjusting the presumptive term to the extent allowed by AS 12.55.155(a) for the aggravating and mitigating factors listed in AS 12.55.155(c) and (d), the presumptive sentencing law still calls for a sentence that would be manifestly unjust.

As explained in *Kirby* and *Bossie,* the question that Judge Smith should have asked was whether, because of the non-statutory mitigator, it would be manifestly unjust to fail to make some adjustment to the otherwise allowable sentence. In Harapat's case, because no statutory mitigators were proved, the otherwise allowable sentence was the unadjusted presumptive term of 5 years' imprisonment—*i.e.,* 5 years in prison without eligibility for discretionary parole.[7]

---

**6.** 477 P.2d 441, 443–44 (Alaska 1970).

**7.** *See* former AS 33.16.090–100 (pre-March 2005 versions). In particular, see former AS 33.16.090(b)—(c), which provided that a prisoner

who was sentenced under the presumptive sentencing law was not eligible for discretionary parole during the legislatively fixed presumptive term, but was (generally speaking) eligible for

As noted above, when Judge Smith ruled that it would not be manifestly unjust to impose this 5–year presumptive term, he indicated that part of the basis for his conclusion was the need to bring "closure" to the sentencing proceedings. But while it is desirable to bring closure to criminal proceedings, this goal must not be employed to defeat a defendant's rights at sentencing. In particular, the perceived desirability of bringing speedy closure to sentencing proceedings is not relevant to a sentencing judge's decision under AS 12.55.165.

We held in *Kirby* that, when AS 12.55.165 requires a sentencing judge to assess the potential "manifest injustice" of imposing the term of imprisonment normally authorized by the presumptive sentencing rules, or of failing to consider a non-statutory mitigating factor, the statute is referring to an evaluation of the facts of the case under the *Chaney* sentencing criteria (the sentencing criteria now codified in AS 12.55.005).[8] The desirability of bringing closure to a criminal proceeding is not among the factors listed in this statute.

Nor should it be. While all would agree that criminal matters should be handled as expeditiously as reasonably possible (while honoring the procedural rights of the parties), the basic question posed under AS 12.55.165 is whether, given the particular facts of the defendant's case, the normal rules of presumptive sentencing—*i.e.,* the limitations on the term of imprisonment that a single sentencing judge can impose, and the limitation on the aggravating and mitigating factors that a single sentencing judge can consider—will lead to an unjust sentence. If a sentencing judge concludes that the normal rules of presumptive sentencing will lead to an unjust sentence, then AS 12.55.165 requires the sentencing judge to refer the defendant's case to the three-judge sentencing panel. Of course, this will delay the ultimate disposition of the case. But the goal—indeed, the requirement—of imposing a fair sentence is far more important than the desirability of bringing the case to a speedy close.

The remaining question is whether this Court should remand Harapat's case to the superior court with directions to reconsider Harapat's request for a referral to the three-judge sentencing panel, or whether this Court should directly order that referral now. Having considered the entire record, we conclude that we should order the referral ourselves, because it would be clearly mistaken to fail to refer Harapat's case to the three-judge panel.

We reach this conclusion for several reasons. First, Judge Smith found the non-statutory mitigating factor of extraordinary potential for rehabilitation, and that finding is not challenged here. Second, no statutory mitigators were proved—so, unless some adjustment is made on account of the non-statutory mitigator, Harapat must receive the 5–year presumptive term specified by former AS 12.55.125(c)(1). And third, as this Court explained in *Lloyd v. State,* 672 P.2d 152 (Alaska App.1983), when the issue is close, sentencing judges should send a defendant's case to the three-judge sentencing panel:

As the only state-wide body specifically charged with the responsibility of determining the existence of manifest injustice, the three-judge sentencing panel is in a unique position to establish a uniform approach to identifying cases in which manifest injustice would result from imposition of a presumptive term. The ability of the three-judge panel to function successfully, however, will depend upon an appropriate level of referral to the panel by individual sentencing judges.... [T]he panel will obviously be powerless to apply its policies to a case potentially involving manifest injustice if a referral is not ordered by the original sentencing judge. We recognize that the referral to the three-judge panel should occur only in exceptional cases. However, where the issue of manifest injustice appears to be a close one, we would urge sentencing judges to resolve any

parole during any judge-imposed sentence enhancement based on aggravating factors.

8.  *Kirby,* 748 P.2d at 762, 765.

doubt in favor of a referral pursuant to AS 12.55.165.

*Lloyd,* 672 P.2d at 155.

For these reasons, we direct the superior court to refer Harapat's case to the three-judge sentencing panel.

In ordering this referral, we express no opinion as to whether the three-judge panel should adjust the 5–year presumptive term. As we noted in *Kirby,* 748 P.2d at 767, and in *Winther v. State,* 749 P.2d 1356, 1360 (Alaska App.1988), the three-judge panel is authorized to independently re-evaluate the facts of Harapat's case. In particular, the panel is not bound by Judge Smith's conclusions concerning Harapat's prospects for rehabilitation, and, even if the three-judge panel agrees that this non-statutory mitigator is proved, it can reach its own assessment of whether manifest injustice would result from failure to adjust Harapat's sentence on account of that factor.[9]

We merely hold that, given Judge Smith's finding of the non-statutory mitigator, and considering that mitigator in light of the other circumstances, it would be clearly mistaken not to refer Harapat's case to the three-judge panel.

*Conclusion*

We AFFIRM Harapat's manslaughter conviction. However, the superior court's decision not to refer Harapat's case to the statewide three-judge sentencing panel is REVERSED. The superior court is directed to refer Harapat's case to the three-judge panel.

---

**9.** See *Kirby,* 748 P.2d at 767: "The three-judge panel is, of course, free to reevaluate [the record] in determining whether Kirby has the unusual prospects for rehabilitation required for application of the [non-statutory] mitigating factor. The three-judge panel is not bound by [the sentencing judge's] findings[,] nor is it bound [to accept the] testimony [favoring the defendant]."