NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

MARK WAYNE KING,

                    Appellant,

          v.

STATE OF ALASKA,

                    Appellee.

Court of Appeals No. A-12489
Trial Court No. 3AN-12-9810 CR

O P I N I O N

No. 2699 — April 16, 2021

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael Spaan and Jack W. Smith, Judges.

Appearances: Rex Lamont Butler, Rex Lamont Butler & Associates, Inc., Anchorage, for the Appellant. Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Wollenberg, Judge, and Mannheimer, Senior Judge.[*]

Judge WOLLENBERG, writing for the Court.
Judge MANNHEIMER, concurring.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Following a bench trial, Mark Wayne King was convicted of ten counts of first-degree sexual abuse of a minor and two counts of second-degree sexual abuse of a minor for sexually abusing his niece between 2009 and 2012.

On appeal, King raises two challenges to his convictions. First, King argues that the police lacked probable cause to arrest him and that the trial court should have suppressed his ensuing statements to the police. Second, King argues that, following trial, the trial court made insufficient factual findings to support the imposition of separate convictions, and he asks this Court to direct the trial court to revisit this issue. We reject these claims, and we affirm King's convictions.

King also challenges his sentence. King was a first felony offender with no significant criminal history. Because of the nature of his offenses, the number of counts with which he was charged, the applicable presumptive sentencing ranges for these counts, and the statutory requirement that certain portions of each term of imprisonment run consecutively, King faced a minimum composite presumptive term of 92 years, 6 months, and 2 days to serve. The judge described this term as "extremely severe" and "a little startling," but the court denied King's request to refer his case to the three-judge sentencing panel, and the court imposed this 92.5-year minimum sentence.

King raises several challenges to his sentence. First, King argues that the trial court erred in denying his request to refer his case to the three-judge sentencing panel. Second, King contends that his sentence is cruel and unusual punishment within the meaning of the Eighth Amendment to the United States Constitution and Article I, Section 12 of the Alaska Constitution. And finally, King challenges a special probation condition that requires him to submit to a penile plethysmograph assessment at the request of his probation officer.

We have reviewed the sentencing court's explanation of its decision not to refer King's case to the three-judge sentencing panel, and we have concerns about the

court's reasoning and analysis. For this reason, we conclude that we must remand King's case to the sentencing court so that the court can reassess whether imposition of the minimum presumptive sentence is manifestly unjust and whether the non-statutory mitigating factor of extraordinary potential for rehabilitation is applicable.

Because we are directing the sentencing court to reconsider King's request for a referral to the three-judge sentencing panel, we do not reach the merits of King's cruel and unusual punishment claim.

With regard to King's challenge to the condition of his probation requiring him to submit to plethysmograph testing, the State concedes that the sentencing court did not apply the necessary level of scrutiny to this provision, and this concession is well-founded.[1] Accordingly, we vacate the portion of Special Probation Condition No. 3 that requires King to submit to plethysmograph assessments.[2]

*Underlying facts and proceedings*

In September 2012, ten-year-old L.K. watched a personal safety video at her school. After the video ended, L.K. approached her school counselor and reported that she had been sexually abused by Mark King, her fifty-seven-year-old biological uncle and part-time caretaker.

Anchorage Police Detective Leonard Torres investigated the report of abuse. When Torres contacted L.K.'s school counselor, the counselor described L.K.'s report to Torres and explained that L.K. was autistic but highly articulate and high-

---

[1]   *See Galindo v. State*, 481 P.3d 686, 691 (Alaska App. 2021).

[2]   If the State wishes to renew its request for this provision during the remand proceedings, the sentencing court must subject the provision to special scrutiny — *i.e.*, the court must affirmatively consider and have good reason for rejecting any lesser restrictions. *See Peratrovich v. State*, 903 P.2d 1071, 1079 (Alaska App. 1995).

functioning. The counselor also stated that L.K. had diagnoses of mood disorder and attention deficit hyperactivity disorder (ADHD). The counselor said that the school was aware of past instances in which L.K. had lied, but she told Torres that L.K. had never lied about anything as serious as sexual abuse and that L.K. had displayed an uncharacteristic level of emotion when she disclosed the abuse.

Torres also spoke with L.K.'s father, who informed Torres that he and L.K. lived with King. L.K.'s father was unaware of L.K.'s allegations and unable to corroborate her assertions.

L.K. was subsequently interviewed by Torres and others at Alaska CARES, a child advocacy center. During those interviews, L.K. reported that King had sexually abused her. L.K. said that King would take L.K. into his room, while wearing nothing but his robe, and have her take her clothes off. L.K. said that King would take off his robe and "play" with her; he would also offer her candy to "play" with him.

L.K. reported that King had touched her vagina, buttocks, and nipples. She also described King's acts of oral, anal, and vaginal penetration of her.

Torres obtained a search warrant for King's house. When the police searched King's bedroom, they photographed and seized sexual paraphernalia, a red robe, and a bag of candy from King's closet. The police also seized a second bag of candy from King's bedroom dresser drawer.

Later that day, Torres intercepted King at the airport and transported him to the police department. King was informed of his *Miranda* rights, and he consented to questioning. During the ensuing interview, King admitted to numerous sexual acts with L.K., including penetrating both L.K.'s anus and her vagina with a purple vibrator. In a subsequent search of King's residence, the police found the purple vibrator in King's bathroom.

– 4 – 2699

Based on his actions between 2009 and 2012, King was indicted on thirteen counts of sexual abuse of a minor in the first degree, two counts of sexual abuse of a minor in the second degree, one count of unlawful exploitation of a minor, and one count of possession of child pornography.[3]

King moved to suppress the statements he made during his interview with Torres, arguing that the police lacked probable cause to arrest him at the airport. Superior Court Judge Michael Spaan denied King's motion.

King subsequently waived his right to a jury trial and proceeded to a bench trial before Superior Court Judge Jack W. Smith. King also waived other foundational rights to which he would otherwise be entitled at a criminal trial. Most notably, he waived his right to cross-examine L.K., saying that he did not want to cause L.K. and their family further pain or anguish. To ensure that L.K. did not have to testify, King stipulated to the admission of both L.K.'s interview with the police at Alaska CARES and L.K.'s testimony before the grand jury. In addition, King's attorney only briefly cross-examined Detective Torres — the State's sole witness at trial — to clarify details about the investigation of the child pornography and exploitation charges. The attorney did not present an opening statement or a closing argument to the superior court.

Following this limited bench trial, the court found King guilty of ten counts of first-degree sexual abuse of a minor and two counts of second-degree sexual abuse of a minor. The court acquitted King of three counts of first-degree sexual abuse of a minor (based on insufficient evidence of digital-vaginal penetration) as well as the unlawful exploitation and possession of child pornography charges.

---

[3] AS 11.41.434(a)(1), AS 11.41.436(a)(2), AS 11.41.455, and AS 11.61.127, respectively.

Neither party asked for specific findings under Alaska Criminal Rule 23(c).[4] (In fact, King's attorney informed the court that he waived specific findings.) However, when the trial court announced its verdict, the court provided a brief explanation of the specific evidence underlying each conviction.

Before sentencing, King asked the court to refer his case to the three-judge sentencing panel, arguing that he had an extraordinary potential for rehabilitation and that imposing even the minimum sentence within the presumptive sentencing range would be manifestly unjust. The trial court denied King's request for the referral, and the court also denied King's separate challenge to his sentence as cruel and unusual punishment. The court imposed a sentence of 92 years, 6 months, and 2 days to serve (the minimum allowable term of imprisonment), with an additional 15 years suspended.

This appeal followed.

*King's claim that the police lacked probable cause to arrest him*

After the State indicted King, King filed a motion to suppress. King argued that the police lacked probable cause to arrest him at the airport and that his ensuing statements to the police should be suppressed as the fruit of that unlawful seizure. The superior court denied King's motion, concluding that his arrest was supported by probable cause.

On appeal, King challenges the court's ruling. He argues that L.K.'s report was not credible and that the police did not sufficiently corroborate the details of L.K.'s report before arresting him.

---

[4]    Alaska Criminal Rule 23(c) provides, in part: "In a case tried without a jury[,] the court shall make a general finding and shall, in addition, on request, find the facts specially."

Probable cause to arrest exists when the "facts and circumstances known to a police officer would justify a [person] of reasonable caution in believing that an offense had been or was being committed and that the person to be arrested is the one who committed it."[5] Probable cause "requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred."[6]

We agree with the trial court that the facts known to the police established probable cause to arrest King. As the trial court observed, L.K. provided detailed descriptions of the abuse, descriptions that one would not expect from a ten-year-old child unless the child had witnessed or experienced the acts described. The police were also able to corroborate some aspects of L.K.'s account prior to arresting King — including that L.K. lived with King and that King was her caretaker, that King owned a red robe, and that he had candy in his closet and in his bedroom dresser.[7]

We reject King's argument that this corroboration was insufficient because it confirmed only "innocuous" details. In making this argument, King relies on the stricter corroboration test that we have applied to police informants.[8] But in the case of citizen informants, only minimal corroboration of "some of the details" of the informant's report is necessary to establish probable cause; we have not required that the

---

[5] *Dunn v. State*, 653 P.2d 1071, 1077 (Alaska App. 1982) (citing *Schmid v. State*, 615 P.2d 565, 574 (Alaska 1980)); *see also Erickson v. State*, 507 P.2d 508, 517 (Alaska 1973).

[6] *State v. Joubert*, 20 P.3d 1115, 1119 (Alaska 2001).

[7] *See Easton v. City of Boulder, Colo.*, 776 F.2d 1441 (10th Cir. 1985) (holding that the inconsistencies in two young children's accusations of sexual abuse did not defeat probable cause for arrest, where the inconsistencies "[did not] undermine the solid core of the children's statements," and where probable cause was based not only on the children's accusations but also on the corroboration of Easton's identity and residency and the discovery of the chair and blanket mentioned by the children).

[8] *See, e.g.*, *Carter v. State*, 910 P.2d 619, 624 (Alaska App. 1996).

corroborated facts be independently incriminating.[9] And as to victim informants, we have left unsettled the question of whether *any* corroboration is required.[10] We therefore reject King's argument that a heightened level of skepticism — a skepticism usually reserved for police informants — was required in this case.

Accordingly, we conclude that the trial court did not err in denying King's motion to suppress.

*King's challenge to the sufficiency of the factual findings supporting his individual convictions*

Prior to sentencing, King filed a motion asking the court to make additional factual findings to explain its verdicts. King essentially argued that, without additional clarification, it was possible that some of the acts for which King was convicted constituted the same offense for double jeopardy purposes and therefore should merge.

In response to King's motion, the court reviewed its prior findings and found that the acts underlying King's convictions occurred on "separate occasions" — that is, they were all "independent events that . . . occurred at different times."

On appeal, King argues that the trial court's factual findings were not sufficiently specific to rule out the possibility that some of his convictions should have

---

[9]  *See State v. Jones*, 706 P.2d 317, 325 (Alaska 1985).

[10]  *See Smith v. State*, 1998 WL 426553, at *4 (Alaska App. July 29, 1998) (unpublished) (discussing in dicta how "Alaska law is a little unclear on the issue of whether a crime victim's report of a crime needs to be corroborated to satisfy the *Aguilar/Spinelli* test"); *see also Goulden v. State*, 656 P.2d 1218, 1220 (Alaska App. 1983) (internal citations omitted) (holding that a warrant based primarily on the alleged victim's testimony in a child abuse case was not improper, even though it was double hearsay, because the victim qualified as a "citizen informant").

merged. King asks us to remand his case to the trial court for a more detailed accounting of the factual basis for each conviction.

But by finding that each of the acts underlying King's convictions occurred on a separate occasion, the trial court has already resolved the critical issue. That is, the court has already found that no two acts occurred during the same episode, and thus no two acts constituted the "same offense" for double jeopardy purposes.[11] King does not challenge the trial court's findings or argue that the evidence was insufficient to establish that the charged conduct occurred on separate occasions.

We further note that the Alaska Supreme Court has now overruled the line of cases upon which King relied to argue that some of the acts of penetration for which he was convicted may have been factually "preparatory and involve the same orifice" as others, so as to require merger.[12]

We therefore reject King's request to remand his case for further findings.

*King's sentencing proceedings*

As we noted earlier, King was convicted of ten counts of first-degree sexual abuse of a minor. Because King was a first felony offender, he faced a presumptive sentencing range of 25 to 35 years on each of these convictions.[13] For the second through the tenth counts of first-degree sexual abuse of a minor, the court was required by statute to run at least 7.5 years of each sentence consecutively to the sentence imposed

---

[11]  U.S. Const. amends. V, XIV; Alaska Const. art. I, § 9.

[12]  *See State v. Thompson*, 435 P.3d 947, 961 (Alaska 2019).

[13]  AS 12.55.125(i)(1)(A)(i).

on the first count.[14]   The trial court was also required to impose at least one additional consecutive day of imprisonment for each of King's two second-degree sexual abuse convictions.[15]

Given these statutory requirements, King faced a minimum composite presumptive term of 92 years, 6 months, and 2 days to serve.  In the absence of any statutory mitigating factors, only the statewide three-judge sentencing panel had the authority to impose a sentence below this presumptive minimum term; the individual sentencing judge lacked this authority.[16]

At the time of sentencing in this case, King was sixty years old.  He had no prior convictions (other than a self-reported thirty-year-old conviction for driving while intoxicated).  King also had a long and steady work history:  King served in the Navy for seven years before obtaining an associate's degree in computer engineering technology. He then worked as a field technician for the Federal Aviation Administration for twenty-three years.  King had also voluntarily undergone a sex offender risk assessment by Dr. Bruce Smith, a psychologist who concluded that King's risk of re-offending was low.

Based in part on these circumstances, King's attorney asked the court to refer King's case to the statewide three-judge sentencing panel.  He argued that King had extraordinary potential for rehabilitation and that imposition of the 92.5-year minimum

---

[14]   Under AS 12.55.127(c)(2)(E), the court was required to run consecutively one-fourth of the presumptive term for each additional crime that is first-degree sexual abuse of a minor. Under AS 12.55.127(e)(3), "presumptive term" is defined as "the middle of the applicable presumptive range," which in this case was 30 years.  One-fourth of 30 years is 7.5 years.

[15]   AS 12.55.127(c)(2)(F).

[16]   *See Smith v. State*, 711 P.2d 561, 567 (Alaska App. 1985); *Heathcock v. State*, 670 P.2d 1155, 1156-57 (Alaska App. 1983).

presumptive term would be manifestly unjust.[17]  In his request, King's attorney noted King's lack of criminal history and his lengthy work history.  The attorney argued that King had taken responsibility for his conduct and shown remorse.  In particular, the defense attorney urged the court to take account of the fact that King had consented to a bench trial and had waived his right to confront L.K. in order to avoid causing her further trauma, essentially ensuring his conviction.

King's attorney also relied heavily on the sex offender risk assessment and psychological evaluation conducted by Dr. Smith, a forensic psychologist with substantial experience treating sex offenders.  King's attorney presented Dr. Smith's report, and later his testimony.

Dr. Smith testified that King's overall risk of re-offending was low and that King had positive prospects for rehabilitation.  Dr. Smith based this conclusion on the series of tests that he administered to King to assess his likelihood of re-offending, as well as the fact that King had recognized his own need for treatment.  Dr. Smith told the court that King's risk of re-offending would be further reduced with treatment, and that King was "eminently treatable."  Dr. Smith acknowledged that, in King's responses to one of the risk assessments, King had minimized the seriousness of his behavior, but Dr. Smith testified that "this kind of thinking process" was typical for a person who had not yet engaged in treatment.

During his allocution to the court, King took responsibility for his conduct and apologized to L.K. and to their family.  He said that there was no "possible excuse" for his behavior and that L.K. "did not, in any way, deserve what happened to her."

---

[17]  AS 12.55.165(a); *Smith*, 711 P.2d at 569-70 (recognizing the non-statutory mitigator of extraordinary potential for rehabilitation).

King reiterated that he was "ready and willing to participate" in any treatment programming or counseling the court deemed necessary.

After considering the testimony, the trial court denied King's request to refer his case to the three-judge panel. Although the court found that King's potential for rehabilitation was "above average," the court concluded that King had not shown by clear and convincing evidence that his potential for rehabilitation was "extraordinary." And although the court acknowledged that the statutorily required 92.5-year minimum sentence was "extremely severe" and "a little startling," the court found that imposing this 92.5-year minimum sentence was not manifestly unjust.

The court then imposed a sentence of 92 years, 6 months, and 2 days to serve (the minimum authorized term of imprisonment), with an additional 15 years suspended.

*Why we remand this case to the superior court for reconsideration of King's request for referral to the three-judge sentencing panel*

Under AS 12.55.165 and AS 12.55.175, a sentencing judge shall refer a defendant's case to the three-judge sentencing panel if one of two circumstances exist: (1) the judge concludes that imposition of the prescribed presumptive sentence would be manifestly unjust, or (2) the defendant proves a non-statutory mitigator like extraordinary potential for rehabilitation, and the judge concludes that it would be manifestly unjust to fail to consider that non-statutory mitigator in imposing the defendant's sentence.[18] As we noted earlier, because there were no applicable statutory mitigators in this case, the sentencing judge had no authority to impose a sentence below the 92.5-year

---

[18] *See Olmstead v. State*, 477 P.3d 656, 661 (Alaska App. 2020) (citing *Daniels v. State*, 339 P.3d 1027, 1030 (Alaska App. 2014)); *Beltz v. State*, 980 P.2d 474, 480-81 (Alaska App. 1999).

presumptive minimum term, and the judge was required to impose this 92.5-year term unless he referred King's case to the three-judge panel.

When a defendant seeks referral of their case to the three-judge panel on the basis of a non-statutory mitigator like extraordinary potential for rehabilitation, the defendant has the burden of proving the mitigator by clear and convincing evidence.[19] If the mitigator is established, the trial court must refer the defendant's case to the three-judge panel if the court finds that it would be manifestly unjust to fail to adjust the presumptive range by some amount, however small, to account for the mitigator.[20]

We have independently reviewed the sentencing record, including Dr. Smith's report and his later testimony. As the sentencing judge acknowledged, the record shows that King had positive prospects for rehabilitation: he had no significant prior criminal history, psychological testing showed that his overall risk for re-offending was low, and Dr. Smith concluded that the root causes of King's criminal conduct were treatable.

The trial court acknowledged that King had "above average" prospects for rehabilitation. The court found Dr. Smith's testimony to be "extremely credible," and the court accepted Dr. Smith's conclusion that King's conduct was "unlikely to be repeated."

At the same time, however, the court found that King failed to show that his prospects for rehabilitation qualified as "extraordinary." In particular, the court expressed concern that King had consistently minimized his conduct in his interviews with the police and again in his examination with Dr. Smith.

---

[19]   AS 12.55.165(a).

[20]   *Kirby v. State*, 748 P.2d 757, 765 (Alaska App. 1987).

But in making this ruling, the sentencing court appeared to believe that King's claim of "extraordinary potential for rehabilitation" required King to present an absolute assurance that he would not re-offend — a standard that no risk assessment could ever meet.[21] In addition, when the court made its ruling, the court relied on generalizations about persons who commit child sexual abuse — generalizations that had questionable applicability to King, given the record in this case. The court opined that "[t]he problem with child molesters, much like drug abusers, is sometimes they just can't control what goes on." And, in contradiction to the court's earlier statement that it accepted Dr. Smith's testimony that King was unlikely to re-offend, the court found that, if King were released, the court "[could not] predict whether he would re-offend."

These comments raise concerns that the court was applying the wrong legal standard and was relying too heavily on generalized assumptions about sex offenders rather than focusing on the specific circumstances and evidence presented in King's case.

As we have explained, King willingly participated in a sex offender risk assessment, and he made clear that he would actively participate in treatment. The court heard testimony from Dr. Smith that King's likelihood of re-offending was low, and the court declared that it found Dr. Smith's testimony credible. Dr. Smith further testified that King's underlying attraction to his niece stemmed from "intimacy deficits" rather than a "fixated, ingrained pattern of deviance," and that King was "eminently treatable." Based on this testimony, as well as the other circumstances of King's case, the court found that King could be rehabilitated within a period of time less than the minimum statutorily required term of 92.5 years.

---

[21] *Id.* at 766 ("We recognize that no one can predict, with certainty, whether an individual will or will not commit future criminal activity.").

As we said in *Kirby v. State*, "no one can predict, with certainty, whether an individual will or will not commit future criminal activity."[22] When a defendant raises the issue of extraordinary potential for rehabilitation, the key question is whether, under the totality of the circumstances, the defendant "can adequately be treated in the community and need not be incarcerated for the full presumptive term in order to prevent future criminal activity."[23] Based on the record of the sentencing proceedings in King's case, it appears that the court failed to apply the proper test in assessing whether King had extraordinary potential for rehabilitation.

That said, it also appears that King may not be eligible for referral to the three-judge panel based on the non-statutory mitigator of extraordinary potential for rehabilitation. The trial court noted that the record (namely, statements made by both L.K. and King, as well as L.K.'s grand jury testimony) indicated that King had engaged in other uncharged acts of sexual contact with L.K. If true, these other uncharged acts would disqualify King from referral to the three-judge panel on the basis of extraordinary potential for rehabilitation.[24]

---

[22]  *Id.*

[23]  *Id.*; *see also O'Connor v. State*, 444 P.3d 226, 234 (Alaska App. 2019) (holding that, in order to find the non-statutory mitigator of extraordinary potential for rehabilitation, "the judge must have articulable reasons, based on the evidentiary record, for concluding that the defendant can be rehabilitated earlier than the minimum term of imprisonment prescribed by the applicable presumptive sentencing range").

[24]  AS 12.55.165(b) (precluding a court from referring a case to the three-judge panel on the basis of a defendant's potential for rehabilitation if the court finds certain aggravating factors, including AS 12.55.155(c)(18)(B)); AS 12.55.155(c)(18)(B) (establishing a factor in aggravation if a defendant is convicted, in relevant part, of first- or second-degree sexual abuse of a minor and has engaged in the same or other conduct involving the same or another victim).

Although the sentencing court noted this potential disqualifying factor, it did not deny King's request for referral to the three-judge panel on this ground, because the parties had not received notice and an opportunity to litigate this issue. For this same reason, we conclude it would be improper for us to affirm the sentencing court's ruling on this alternate ground.[25] Accordingly, we conclude that a remand for reconsideration of the applicability of the non-statutory mitigating factor is required.

But even if King may be statutorily barred from relying on the non-statutory mitigator of extraordinary potential for rehabilitation, he is not precluded from requesting referral to the three-judge panel based on the manifest injustice of the presumptive term.[26] We therefore turn to King's claim that the prescribed presumptive sentencing range is manifestly unjust as applied to him.

The court's explanation of its rejection of King's manifest injustice claim was fairly cursory. The court noted that L.K. was young, autistic, and particularly vulnerable, and that King had repeatedly abused his niece over a period of more than three years. The court's findings are supported by the record, and the court properly took account of these facts in assessing the manifest injustice of the required presumptive term.

At the same time, the court described the required 92.5-year term of imprisonment as "extremely severe" and "a little startling when you look at the number

---

[25] *Cf. Hartley v. State*, 653 P.2d 1052, 1056 (Alaska App. 1982) (concluding that "the trial court has the power *sua sponte* to alert the parties to possible aggravating and mitigating factors present in the record so long as the parties are given an opportunity to marshall the relevant evidence, pro and con, and make their arguments accordingly"), *abrogated in part by Blakely v. Washington*, 542 U.S. 296 (2004), *as recognized in Alexiadis v. State*, 355 P.3d 570, 572 (Alaska App. 2015).

[26] *See State v. Seigle*, 394 P.3d 627, 635 (Alaska App. 2017).

of years involved." The court nonetheless found that this "startling" sentence did not "shock the conscience," given the facts of the case.

But the court's comments about the facts of King's case in relation to the manifest injustice of the presumptive term focused primarily on the circumstances of the abuse itself, with little mention of King's background, his decision not to require his victim to testify, or Dr. Smith's favorable assessment of King's prospects for rehabilitation. We are thus unable to determine whether the court conducted the proper "totality of the circumstances" analysis when it assessed whether the required presumptive term was manifestly unjust.[27]

When a sentencing court is asked to evaluate whether a prescribed presumptive term is manifestly unjust, the court must consider not only whether the defendant's conduct is significantly different from a typical offense within the definition of the defendant's crime, but also whether other circumstances make the defendant significantly different from a typical offender within that category.[28] This includes any facts related to proposed statutory or non-statutory mitigating factors, even if there was not enough evidence for the court to separately find those mitigators.[29]

We agree with the sentencing court that King's conduct was not significantly mitigated when compared to the typical offense of first-degree sexual abuse of a minor. But there were several factors that set King apart from a typical offender. First is the unusual procedural background of King's case. Although King elected to go to trial, he affirmatively waived many of the bedrock procedural rights to which he was

---

[27]   *See Duncan v. State*, 782 P.2d 301, 304 (Alaska App. 1989) ("[I]n order to decide whether the presumptive term would be manifestly unjust, the court must consider the totality of the circumstances surrounding the case.").

[28]   *See Beltz v. State*, 980 P.2d 474, 480 (Alaska App. 1999); *Duncan*, 782 P.2d at 304.

[29]   *Seigle*, 394 P.3d at 636-37 (discussing *Duncan*, 782 P.2d at 303-04).

entitled as a criminal defendant. Most critically, King waived his right to cross-examine L.K., stating that he wished to avoid causing further pain for L.K. and their family. He expressly agreed to the admission of L.K.'s Alaska CARES interview and L.K.'s grand jury testimony (evidence which otherwise would have been subject to hearsay objections), so that L.K. would not have to appear in court and take the stand. King agreed to a bench trial, and his attorney did not give an opening statement or a closing argument to the judge. In addition, King's attorney did not substantively cross-examine Detective Torres, the State's sole witness.

In other words, King essentially waived his right to challenge the State's case or to put on his own case. As a practical matter, King's decisions essentially resulted in a "slow plea" to the charges. The record is clear that he took these steps because he wanted to avoid any further trauma to L.K. and their family. King also expressed significant remorse at sentencing, he willingly participated in a sex offender risk assessment, and he made clear that he would actively participate in sex offender treatment.

The sentencing court was required to consider these circumstances when assessing whether the prescribed presumptive sentence would be manifestly unjust under the facts of King's case. As we said in *State v. Seigle*:

> Because the sentencing court is required to base its conclusion regarding manifest injustice on the totality of the circumstances (*i.e.*, the facts of the current criminal episode, plus the history and underlying circumstances of the offender), the sentencing court's assessment will often include circumstances that, standing alone, would be insufficient to warrant a departure from the applicable presumptive sentencing range.[30]

---

[30] *Id.* at 635.

The court was likewise required to consider King's prospects for rehabilitation as part of the totality of circumstances, regardless of whether these prospects independently established the non-statutory mitigator of extraordinary potential for rehabilitation.[31]

Having independently reviewed the sentencing record, we are not confident that the sentencing court engaged in the type of thorough review that is required under the totality of circumstances test to assess whether King was significantly different from the typical offender. We therefore conclude that we must remand this case to the sentencing court for a further evaluation of whether referral to the three-judge panel is warranted on this ground.

Because we are remanding King's case for reconsideration of his request for referral to the three-judge panel, we need not address King's argument that his term of imprisonment constitutes cruel and unusual punishment.

*Conclusion*

We AFFIRM King's convictions. We REMAND this case to the superior court for reconsideration of whether the mandated 92.5-year composite presumptive term of imprisonment is manifestly unjust as applied to King and reconsideration of the non-statutory mitigating factor of extraordinary potential for rehabilitation. The court may hold additional proceedings to consider this question. The superior court shall notify this Court of its decision within 120 days of the issuance of this opinion. (The superior court may extend this deadline for good cause, conditioned upon a status report to this Court.)

---

[31] *Id.* at 637-38 (concluding that a defendant's prospects for rehabilitation should be considered as part of the totality of the circumstances required by a manifest injustice analysis).

Additionally, we VACATE the plethysmograph provision in Special Probation Condition No. 3. If the State renews its request for this condition, the court must subject the provision to special scrutiny.

If the superior court again declines to refer King's case to the three-judge panel, and if King wishes to challenge the superior court's decision, he shall file a notice in this Court within thirty days of the distribution of the superior court's decision.

If the superior court refers King's case to the three-judge sentencing panel, King shall have thirty days from the date of distribution of the three-judge panel's decision to notify this Court if he intends to appeal that decision.

If King files notice of his intent to appeal, a supplemental record will be prepared, and briefing will proceed as provided in the Appellate Rules.

We retain jurisdiction of this case.

Judge MANNHEIMER, concurring.

I agree with my colleagues that there is no merit to King's suppression argument, nor is there any merit to King's claim that the trial judge made insufficient findings to support the imposition of separate convictions on King's various counts of sexual abuse of a minor.

I think there may be some merit to King's claim that he has extraordinary potential for rehabilitation compared to the typical sexual abuse offender, but I conclude that it is pointless to remand King's case to the superior court for reconsideration of this claim, because the record demonstrates that King engaged in additional uncharged acts of sexual abuse — thus disqualifying him from referral to the three-judge sentencing panel even if he proved that he had extraordinary potential for rehabilitation. *See* AS 12.55.165(b) and AS 12.55.155(c)(18)(B).

However, King could still seek referral to the three-judge panel (and potential reduction of his sentence) on the basis that the minimum sentence required by our sentencing statutes is manifestly unjust. *See* AS 12.55.165(a). And on this point, I believe that King's case illustrates a significant problem in our state's sentencing law. This problem arises from the combined effect of three aspects of our law: (1) the definition of what constitutes a separately chargeable sexual offense, (2) the near-absolute authority of the executive branch to decide how many of these potential charges to bring against a particular defendant, and (3) the statutory requirement of consecutive sentencing for each individual conviction.

Our supreme court has held that, under our sexual abuse of a minor statutes, each instance of sexual penetration constitutes a separately punishable offense, even when those acts of sexual penetration occur during the same episode of sexual abuse.[1]

Most of this Court's prior sexual abuse of a minor cases have involved defendants who had continuous or repeated private access to their victims — family members, trusted family friends, or adults in a position of authority as defined in AS 11.41.470(5). And because of these defendants' access to their victims, almost all of these sexual abuse cases involved multiple, separately chargeable acts of unlawful penetration.[2]

---

[1]   *State v. Thompson*, 435 P.3d 947, 961 (Alaska 2019).

[2]   *See*, *e.g.*, *Evans v. State*, unpublished, 2017 WL 3662457 (Alaska App. 2017) (The defendant was originally charged with seven counts of first-degree sexual abuse of a minor, but the evidence indicated that he could have been charged with many more counts, because he had sexual intercourse with his fifteen-year-old stepdaughter every week or two until she was seventeen. The defendant pleaded guilty to one consolidated count, and he received a sentence of 30 years to serve.); *Turney v. State*, unpublished, 2017 WL 2492487 (Alaska App. 2017) (The defendant was originally charged with twenty counts of first-degree sexual abuse of a minor and first-degree sexual assault for sexually abusing his stepdaughter on almost a daily basis from the time she was eleven years old until she was close to eighteen. He ultimately agreed to be found guilty of three counts (one count of first-degree sexual abuse of a minor, and two more consolidated counts of first-degree sexual abuse of a minor and first-degree sexual assault), and he received a sentence of 41 years to serve.); *Argueta v. State*, unpublished, 2017 WL 1968279 (Alaska App. 2017) (The defendant was originally charged with two counts of first-degree sexual abuse of a minor and two counts of second-degree sexual abuse of a minor, based on numerous acts of sexual penetration and sexual contact with his eleven-year-old stepsister over the course of a year. He pleaded guilty to one consolidated count of attempted first-degree sexual abuse of a minor, and he received a sentence of 22 years to serve.).

Under our law, the State has essentially absolute control over whether to charge any and all of these potential counts of first-degree sexual abuse of a minor.[3] And because each additional count triggers a mandatory consecutive sentence of imprisonment under AS 12.55.127(c)(2)(E), prosecutors are able to exercise substantial control over a defendant's sentence. In many instances — as illustrated by King's case — the prosecutor's control over a defendant's sentence is all but total.

In King's case, the State elected to charge King with thirteen individual counts of first-degree sexual abuse of a minor, and King was found guilty of ten of these counts. These ten individual convictions meant that the superior court was required to impose a minimum composite sentence of more than 90 years' imprisonment, regardless of how the sentencing judge viewed King's actions, King's background, and King's prospects for rehabilitation.

Moreover, under Alaska's parole statutes, when a defendant receives a presumptive term of imprisonment for one count of first-degree sexual abuse of a minor, plus one or more additional mandatory consecutive terms of imprisonment under AS 12.55.127 for other counts of first-degree sexual abuse of a minor, the defendant is not eligible for discretionary parole until they have served the entire mandatory total. *See* AS 33.16.090(a)(1)(D) and AS 33.16.090(b)(6)(A).[4] And because first-degree sexual abuse of a minor is an unclassified sexual felony under our sentencing laws,[5] defendants sentenced for this crime are not eligible for good time credit — *i.e.*, not

---

[3] *See State v. Carlson*, 555 P.2d 269, 271–72 (Alaska 1976); *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950–51 (Alaska 1975); *State v. District Court*, 53 P.3d 629, 631, 633 (Alaska App. 2002).

[4] At the time of King's offenses, the corresponding discretionary parole provisions were AS 33.16.090(b)(2) and AS 33.16.090(b)(7)(A).

[5] AS 11.41.434(b).

eligible for release on mandatory parole based on good behavior after serving two-thirds of their sentence.  *See* AS 33.20.010(a)(3)(B).[6]

Thus, when a defendant convicted of first-degree sexual abuse of a minor receives a mandatory composite sentence of 70, 80, or 90 years' imprisonment, this is in fact a life sentence — a life sentence that is dictated, not by a sentencing judge's analysis of what justice requires, but instead purely by the prosecutor's charging decision and the jurors' verdicts (jurors who, under our law, are forbidden from taking the defendant's punishment into consideration).[7]

No reasonable person disputes that sexual abuse of children is a condemnable crime — a crime that can leave lasting physical and mental injuries on its victims.  Under our law, the legislature is the branch of government entrusted with the authority to determine the proper punishment for a particular crime,[8] and the legislature has enacted severe penalties for the sexual abuse of minors.[9]

But in some cases, these severe penalties, coupled with a prosecutor's unfettered charging discretion and our law's requirement of consecutive sentencing, can lead to mandatory sentences of imprisonment that are decades longer than reasonably necessary to satisfy the goals of sentencing codified in AS 12.55.005.

---

[6]  The Alaska legislature did not eliminate good time credit for sexual felonies until July 2013, after King committed his crimes.  *See* SLA 2013, ch. 43, §§ 33 and 46(a).  Thus, King himself is eligible for good time credit — but, since July 2013, defendants in his situation have not been eligible for good time credit.

[7]  *See*, *e.g.*, *Martin v. State*, 664 P.2d 612, 619 (Alaska App. 1983); Alaska Criminal Pattern Jury Instruction No. 1.49.

[8]  *See Thessen v. State*, 508 P.2d 1192, 1197 (Alaska 1973) (overruled on other grounds by *State v. Dunlop*, 721 P.2d 604, 609 (Alaska 1986)); *Nell v. State*, 642 P.2d 1361, 1368–69 (Alaska App. 1982).

[9]  *See* AS 12.55.125(i).

Perhaps for this reason, when a prosecution for sexual abuse of a minor involves a multitude of separate counts, the case is normally resolved with a plea bargain in which the State drops some of the charges or consolidates the charges into one or more representative counts. See, for example, the cases described in footnote 2 of this concurrence.

But when, in cases like King's, the government pursues all of the charges to trial and secures convictions on a multitude of counts, sentencing judges must be particularly vigilant to make sure that the defendant's total sentence does not become manifestly unjust (as that concept has been defined in our cases construing AS 12.55.165).

I believe that King's case represents an instance where the mandatory minimum composite sentence is manifestly unjust.

I acknowledge that King engaged in a lengthy and reprehensible sexual abuse of his niece — a girl who, because of her youth and her autism, was particularly vulnerable and unable to fully grasp what was happening to her. But King had no criminal record, and he was remorseful for what he had done. Psychological testing showed that, with proper treatment and supervision, King was unlikely to re-offend. And King essentially did everything, short of pleading guilty, to ensure that he would be convicted.

King stipulated to the admission of most of the evidence against him (thus ensuring that his victim would not be required to testify), he refrained from substantively cross-examining the State's sole live witness at the trial (the detective who investigated the case), and he presented no closing argument to the superior court at the end of his trial. In sum, as Judge Wollenberg notes in her lead opinion, King's litigation strategy amounted to a type of "slow plea".

2699

But because King did not reach a plea bargain with the State, his case did not end in the typical manner. Instead of being found guilty of one or a few representative counts (or consolidated counts), King was convicted of ten counts of first-degree sexual abuse of a minor — and, as a result, Alaska's sentencing laws called for a mandatory minimum composite sentence exceeding 90 years.

King's case illustrates how three components of Alaska law — each of them salutary when considered separately — can combine on occasion to produce an unjust result. I therefore agree with my colleagues that the superior court must reconsider King's request for referral of his case to the three-judge sentencing panel.